**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

Craftwood II, Inc., a California corporation, dba Bay Hardware, and Craftwood III, Inc., a California corporation, dba Lunada Bay Hardware, individually and as representatives of all others similarly situated,

Plaintiffs,

v.

Horizon Global Corporation, a Delaware corporation, dba Reese and dba Harper; Horizon Global Americas, Inc., a Delaware Corporation, f/k/a Cequent Performance Products, Inc., a Delaware corporation and successor by merger with Cequent Consumer Products, Inc., an Ohio corporation, dba Reese and dba Harper; Comprehensive Marketing, Inc., an Illinois corporation;

Defendants.

Case No. 1:17-cv-04129

**Class Action Complaint for Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 and 47 C.F.R. § 64.1200); Demand for Jury Trial; Exhibits**

**[Fed. R. Civ. P. 3, 8, 23; 28 U.S.C. § 1331]**

Plaintiffs Craftwood II, Inc., dba Bay Hardware ("Bay Hardware") and Craftwood III, Inc., dba Lunada Bay Hardware ("Lunada Bay") (collectively, "Plaintiffs"), bring this action on behalf of themselves and all other similarly situated parties, and aver:

## Introduction

1. More than two decades ago the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, was enacted into law. The law responded to countless complaints by American

consumers and businesses about the cost, disruption, and nuisance imposed by junk faxes. The law prohibited the transmission of facsimile advertising without the prior express invitation or permission of the recipient. In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005.[1] As amended, the law requires a sender to include in its faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future faxes and explains how to exercise that right.

2. Plaintiffs bring this class action to recover damages for and enjoin repeated junk faxing by Defendants in direct violation of the TCPA and the regulations promulgated by the Federal Communications Commission. Within four years preceding the filing of this Complaint, Defendants have sent junk faxes to Plaintiff, including, but not limited to, the facsimile transmission of advertisements to Bay Hardware's telephone facsimile number on July 19, 2016, November 9, 2016, November 16, 2016, November 30, 2016, and May 4, 2017, true and correct copies of which are attached hereto as Exhibits 1 through 5, and the facsimile advertisements to Lunada Bay's telephone facsimile number on November 9, 2016, November 16, 2016, November 30, 2016, and May 4, 2017, true and correct copies of which are attached hereto as Exhibits 6 through 9.

3. **Subject Matter Jurisdiction, Standing and Venue**. This Court has subject matter jurisdiction over this matter under federal-question jurisdiction, 28 U.S.C. § 1331. *See Mims* v. *Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 747, 1818 L. Ed. 2d 881 (2012). Plaintiffs have

---

[1] Unless otherwise noted, all statutory references are to this statute in effect since 2005.

standing to seek relief in this Court because 47 U.S.C. § 227 (b)(3) authorizes commencement of a private action to obtain damages for Defendants' violations of the TCPA and/or FCC regulations, to obtain injunctive relief, or for both such actions. Plaintiffs sustained concrete and actual injury as a result of Defendants' actions and omissions because Defendants' junk faxes, among other things, wrongfully occupied Plaintiffs' facsimile telephone lines; caused Plaintiffs' fax lines to be unavailable for legitimate business use; wasted time required to manage and dispose of Defendants' junk faxes; consumed and wasted Plaintiffs' electricity, paper, and toner; invaded Plaintiffs' privacy rights; and violated Plaintiffs' interests in seclusion. Plaintiffs did not give Defendants prior express permission invitation or permission to send fax advertisements, including, but not limited to Exhibits 1 through 9 to this Complaint. Venue is proper in this Court because some of the tortious acts complained of arose in this district and some class members reside in Illinois.

4. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendants because they regularly conduct business within the state of Illinois, because Defendants intentionally directed the facsimile advertisements the subject of this action to recipients within the state of Illinois, and because Defendants committed at least some of its violations of the TCPA and FCC regulations within the state of Illinois.

## The Parties

5. **Individual Plaintiffs/Class Representatives.** Plaintiff Craftwood II, Inc., is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of California, doing business as Bay Hardware, with its principal place of business in Seal

Beach, California. Bay Hardware is, and at all times relevant hereto was, the subscriber of the facsimile telephone number ((562) 594-4054) to which Defendants sent junk faxes, including, but not limited to, the fax attached as Exhibits 1 through 5 to this Complaint.

6. Plaintiff Craftwood III, Inc., is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of California, doing business as Lunada Bay Hardware, with its principal place of business in Palos Verdes Estates, California. Lunada Bay is, and at all times relevant hereto was, the subscriber of the facsimile telephone number ((310) 377-5827) to which Defendants sent junk faxes, including, but not limited to, the faxes attached as Exhibits 6 through 9 to this Complaint.

7. **Defendant Horizon Global Corporation.** Defendant Horizon Global Corporation dba Reese and dba Harper ("HGC"), is a corporation organized and existing under the laws of the state of Delaware, and having its principal place of business in Troy, Michigan. At all relevant times, Horizon Global has been a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1).

8. **Defendant Horizon Global Americas.** Defendant Horizon Global Americas Inc., (f/k/a Cequent Performance Products, Inc., a Delaware corporation and successor by merger with Cequent Consumer Products, Inc., an Ohio corporation) dba Reese and dba Harper ("HGA"), is a corporation organized and existing under the laws of the state of Delaware, and having its principal place of business in Plymouth, Michigan. At all relevant times, Horizon Global has been a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1).

9. **Defendant CMI.** Defendant Comprehensive Marketing, Inc. ("CMI"), is a corporation organized and existing under the laws of the state of Illinois, and having its principal place of business in Lombard, Illinois. At all relevant times, CMI has been a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1). HGC, HGA, and CMI are collectively referred to herein as "Defendants."

**The TCPA's Prohibition Against Junk Faxing**

10. By the early 1990s advertisers had exploited facsimile telephone technology to blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance, and cost on the recipients. Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate fax communications from junk advertisements and to discard the latter.

11. Congress responded to the problem by passing the TCPA in 1991. The law was enacted to eradicate junk faxes and stanch "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991). It sought to accomplish this objective by prohibiting advertisers from transmitting facsimile advertisements without first obtaining prior express invitation or permission from the recipient.

12. The original law did not achieve its objectives, however. In the decade following the TCPA's enactment, American consumers and businesses continued to be "besieged" by junk

faxes because senders refused to honor requests by recipients to stop.[2]  Congress responded by strengthening the law through the JFPA.  This 2005 amendment for the first time required advertisers to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements").[3]  To comply with these requirements, an advertiser must include a clear and conspicuous notice at the top or bottom of the first page of the advertisement, separate from the advertising copy and any other disclosures, that informs recipients of their right to stop future junk faxes and of the legal requirements for an effective opt-out request.  The notice must be distinguishable from the advertising copy by use of bolding, italics, and different font.

**Horizon Global and CMI's Illegal Junk Fax Program**

13.     HGC groups its operating segments into reportable segments by the region in which sales and manufacturing efforts are focused.  HGC's reportable segment in the Americas is HGA.  HGC and HGA are collectively referred to herein as "Horizon Global."  Horizon Global is a designer, manufacturer and distributor of a wide variety of towing, trailering, cargo management, and other related accessory products on a global basis, serving the automotive aftermarket, retail and original equipment channels.  In connection with its Reese and Reese Secure brands, Horizon Global manufactures and sells tie downs to secure and protect cargo for travel.  In connection with its Harper brand, Horizon Global manufactures and sells cleaning

---

[2]     FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003).

[3]     *See* 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

tools, including brooms, brushes, mops, buckets, dustpans, and squeegees.

14. Plaintiffs are informed and believe, and upon such information and belief aver, that HGA (f/k/a Cequent Performance Products, Inc.) is the registrant of the trademark "Reese." The Reese Brands website (www.reesebrands.com) states, "REESE® Brands, the REESE® logo and REESE® graphics are the service marks, trademarks or registered trademarks owned by Horizon Global Corporation."

15. CMI styles itself a "full service manufacturer's representative." On information and belief, within the past four years CMI has served as Horizon Global's authorized marketing agent to promote the sale of Horizon Global's products marketed under the Reese and Reese Secure brands. Horizon Global and CMI, working within the course and scope of their joint marketing arrangement, have adopted and implemented an illegal junk fax advertising program to promote the sale of Horizon Global's property, goods and services offered under the Reese, Reese Secure, and Harper brands. All faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of Defendants' overall, promotion, and sale of Defendants' property, goods, and services. These illegal junk faxes include, but are not limited to, Exhibits 1 through 9 to this Complaint.

16. Plaintiffs are informed and believe, and upon such information and belief aver, that Defendants transmitted their junk faxes without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations. Plaintiffs did not give Defendants prior express invitation or permission to send facsimile advertisements, including, but not limited to, Exhibits 1 through 9 to this Complaint.

17. In the course of their illegal fax advertising campaigns, Defendants failed to comply with the Opt-Out Notice Requirements.

18. Plaintiffs are informed and believe, and upon such information and belief aver, that all Defendants approved, authorized and/or participated in the formulation, preparation and sending of the fax advertisements; received and retained the benefits of the fax advertisements in the form of revenue, name/brand recognition and promotion; and had actual notice of the unlawful activity constituting the violations herein and failed to take steps to prevent the same.

19. **Private Right of Action.** Under section (b)(3) of the TCPA, Plaintiffs have a private right of action to bring this action on behalf of themselves and on behalf of the Plaintiff Class to redress Defendants' violations of the Act and the FCC regulations.

**Class Action Averments**

20. **Statutory Reference.** This action is properly maintainable as a class action because (a) all prerequisites of rule 23(a) are satisfied; (b) prosecution of separate actions by one or more individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and would establish incompatible standards of conduct for Defendants, in the manner contemplated by rule 23(b)(1)(A); (c) Defendants have acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole, as contemplated by rule 23(b)(2); and (d) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair

and efficient adjudication of the controversy, as contemplated by rule 23(b)(3).

21.     **Class Definition.** The Plaintiff Class consists of all persons and entities that were subscribers of facsimile telephone numbers to which material that advertised the commercial availability or quality of Horizon Global property, goods, or services was sent via facsimile transmission within four years preceding the commencement of this action, including, without limitation the faxes attached as Exhibits 1 through 9 to this Complaint.  Plaintiffs reserve the right to amend the class definition after completion of class certification discovery.[4]

22.     **Numerosity.** Plaintiffs are informed and believe, and upon such information and belief aver, that the Plaintiff Class numbers in the thousands, and is therefore sufficiently numerous that the joinder of all members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with litigation on an individual basis.

23.     **Typicality.**  Plaintiffs' claims are typical of those held by the Plaintiff Class because they share the same essential characteristics.  Among other things, they were sent the same type of unsolicited junk fax communications; they have the same claims under the TCPA and FCC regulations; and they are entitled to the same statutory damages and injunctive relief.

---

[4]     Excluded from the Plaintiff Class are officers, directors, and employees of any Defendant or any affiliated company; legal representatives, attorneys, heirs, successors or assigns of any Defendant, Defendants' officers and directors, or of any affiliated company; parent and subsidiary companies of either Defendant; any entity in which any of the foregoing persons have or have had a controlling interest; any members of the immediate families or the foregoing persons; any federal, state and/or local governments, governmental agencies, including the Federal Communications Commission; and attorneys of record in this action and their immediate family members.

In sum, Plaintiffs' claims arise from the same course of conduct that gives rise to the claims of the Plaintiff Class, and Plaintiffs' claims are based on the same legal theories.

24. **Adequacy of Representation.** The Plaintiff Class will be well represented by Plaintiffs and its counsel. Plaintiffs appreciate the responsibilities of a class representative and understand the nature and significance of the claims made in this case. Plaintiffs can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between their interests and the interests of other class members. Plaintiffs' counsel have the necessary resources, experience and ability to prosecute this case on a class action basis. Plaintiffs' attorneys have extensive experience representing consumers and other clients in complex business disputes, have significant experience as class counsel in federal and state courts, and have significant experience prosecuting class actions for TCPA violations.

25. **Common Questions of Law and Fact Are Predominant**. Questions of law and fact common to the class predominate over questions affecting only individual class members:

    A. **Common Questions of Fact**. This case presents numerous questions of fact that are common to all class members' claims. The case arises out of a common nucleus of fact and standardized conduct by Defendants because, among other things: (1) the same type of faxes; (2) were transmitted by the same senders, in the same manner and from the same facsimile telephone number; (3) in violation of the same statute(s) and FCC regulations in the same manner; and (4) entitling class members to receive the same statutory damages and injunctive relief.

      B.    **Common Questions of Law**. The case presents numerous common questions of law, including, but not limited to:

      (1)    whether the faxes that are the subject of this lawsuit are advertisements within the ambit of the TCPA and the FCC regulations;

      (2)    whether Defendants sent unsolicited facsimile advertisements in violation of 47 U.S.C. § 227(b)(1)(C);

      (3)    whether Defendants complied with the Opt-Out Notice Requirements of the TCPA and the FCC's regulations, and the legal consequences of the failure to comply with those requirements;

      (4)    whether HGC is directly liable for the sending of the illegal junk fax advertisements;

      (5)    whether HGC is vicariously liable for the sending of the illegal junk fax advertisements;

      (6)    whether HGA is directly liable for the sending of the illegal junk fax advertisements;

      (7)    whether HGA is vicariously liable for the sending of the illegal junk fax advertisements;

      (8)    what constitutes a willful or knowing violation of the TCPA within the

meaning of 47 U.S.C. § 227(b)(3);

(9)　　whether Defendants committed willful and/or knowing violations of the TCPA and/or the FCC's regulations;

(10)　　whether damages should be increased on account of Defendants' willful and/or knowing violations and, if so, by what amount; and

(11)　　whether the injunctive relief sought in paragraph 32 should issue.

26.　　**Injunctive Relief Is Appropriate**.  Horizon Global and CMI have acted on grounds that apply generally to the Plaintiff Class, making injunctive relief appropriate with respect to the Plaintiff Class as a whole.

27.　　**Superiority of Class Adjudication.**  This action should be maintained as a class action because a class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, (a) common questions of law and fact, including those identified in paragraph 25, predominate over questions affecting only individual members; (b) prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants; (c) proof of Plaintiffs' claims will also prove the claims of the proposed class without the need for separate and individualized proceedings and the statutory damages provided by the TCPA are the same for all members of the proposed class, such that damages can be calculated with mathematical certainty; (d) the practical economics of litigation and the potential recovery from individual litigation make it uneconomical for class members to

prosecute individual claims; (e) class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings in the event individual cases are brought; (f) no litigation other than this case has been commenced against Defendants; (g) class litigation would serve to educate members about their legal right to stop unwanted facsimile advertising, a particularly important interest in light of Defendants' failure to make disclosures required under the TCPA; (h) as a practical matter, due to the practical economics of litigation, the vast majority of Plaintiff Class members are not likely to bring claims and obtain relief absent class certification; and (i) equity dictates that all persons who stand to benefit from the relief sought herein should be subject to this action and, hence, subject to an order spreading the cost of litigation among class members in relationship to the benefits received.

**Count I: Claim for Relief for Violations of the TCPA and FCC Regulations**

28. **Incorporation**. Plaintiffs and the Plaintiff Class reassert the averments set forth in all preceding paragraphs above.

29. **Private Right of Action**. Under 47 U.S.C. § 227(b)(3), Plaintiffs have a private right of action to bring this claim for damages and injunctive relief on behalf of themselves and on behalf of the Plaintiff Class to redress Defendants' violations of the TCPA and FCC regulations.

30. **Direct Liability of Horizon Global and CMI for Violations of the Prohibition of Unsolicited Facsimile Advertising**. Within four years preceding the commencement of this action, including, without limitation, on July 19, 2016, November 9, 2016, November 16, 2016,

November 30, 2016, and May 4, 2017, and continuing to the present, Horizon Global and CMI violated 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. 64.1200(a)(1)(4) by using a telephone facsimile machine, computer, or other device to send unsolicited facsimile advertisements to telephone facsimile machines of Plaintiffs and other members of the Plaintiff Class. Horizon Global and CMI are each senders of all unsolicited facsimile advertisements and are therefore directly liable for these violations because they were persons on whose behalf the advertisements were sent and, in the alternative, because their goods and services were advertised or promoted in the facsimile advertisements.

31. **Horizon Global's Vicarious Liability**. In the alternative, Horizon Global is vicariously liable for CMI's violations of 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. 64.1200(a)(1)(4) because, on information and belief, in addition to the reasons set forth in paragraph 18, Horizon Global (1) retained CMI as its authorized agent to promote the sale of its products and services, and sending facsimile advertisements were within the course and scope of the agency; (2) exercised actual control over the operation of the illegal fax-blasting program; (3) had the ability to control the operation of the illegal fax-blasting program; (4) actively participated in the illegal fax-blasting program; and (5) received, ratified and retained benefits received from the illegal fax-blasting program.

32. **Injunctive Relief.** Subsection (b)(3)(A) of the TCPA authorizes Plaintiffs to bring an action to enjoin a violation of the act and/or FCC regulations. Plaintiffs request that preliminary and permanent injunctions issue to: (1) prohibit Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from committing further violations of the Act and FCC regulations, and thereby, among other

things, prohibiting Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from sending to any person or entity any further unsolicited fax advertisements; (2) require Defendants to deliver to Plaintiffs all records of facsimile advertisements that are the subject of this lawsuit, including all content sent via facsimile, fax lists used, and records of transmission; (3) require Defendants to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendants to provide written notice to all persons and entities to whom they sent, via facsimile transmission, advertisements in violation the act and/or FCC regulations, warning such persons and entities that the facsimile transmission of unsolicited advertisements is in violation of the TCPA and FCC regulations and that they should not be led or encouraged in any way by Defendants' violations of the act and/or FCC regulations to send advertisements of their own that violate the act and/or FCC regulations; and (5) require Defendants to conspicuously place on the homepage of their respective websites the warnings contained in subparagraph 4 of this paragraph.

33.     **Damages.**  Subsection (b)(3)(B) of the Act provides for the recovery of damages in the minimum amount of $500 for each violation by Defendants of the TCPA and/or FCC regulations alleged in this Count.  In addition, Plaintiffs are informed and believe, and upon such information and belief aver, that Defendants committed their violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the act.

## Prayer for Relief

WHEREFORE, Bay Hardware, Lunada Bay, and the Plaintiff Class pray for judgment against Defendants HGC, HGA, and CMI, and each of them, as follows:

1. In accordance with 47 U.S.C. § (b)(3)(B), awarding statutory damages in the amount of $500 for each violation of the TCPA's prohibition against unsolicited facsimile advertisements in an amount not less than $5 million, and trebling of such statutory damages;

2. Entering the preliminary and permanent injunctions requested in paragraph 32 of this Complaint;

3. Certifying the Plaintiff Class defined in paragraph 21 of this Complaint;

4. Appointing Plaintiffs as representatives for the Plaintiff Class and awarding them an incentive award for their efforts as class representatives;

5. Appointing Plaintiffs' counsel as counsel for the Plaintiff Class;

6. Ordering payment of Plaintiffs' costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

7. Ordering Defendants to provide notice to members of the Plaintiff Class proposed in paragraph 21, at their own expense, of the pendency of this action and all other notices

ordered by the Court;

8. Awarding prejudgment interest; and

9. Awarding such other and further relief as the Court shall deem just and proper.

**Jury Demand**

Plaintiffs demand trial by jury on all issues triable by jury.

DATED: May 31, 2017

PAYNE & FEARS LLP

/s/ C. Darryl Cordero

C. Darryl Cordero [California Bar No. 126689; Admitted to the General Bar of this Court]
Email: cdc@paynefears.com
Matthew K. Brown [California Bar No. 252503; Admitted to the General Bar of this Court]
Email: mkb@paynefears.com
Payne & Fears LLP
1100 Glendon Avenue, Suite 1250
Los Angeles, CA 90024
Telephone: (310) 689-1750

*Local Counsel
Peter Trobe [Illinois Bar No. 2857863]
Email: ptrobe@tbalaws.com
Trobe, Babowice & Associates, LLC
404 West Water Street
Waukegan, Illinois 60085
Telephone: (847) 625-8700

Attorneys for Plaintiffs Craftwood II, Inc., dba Bay Hardware, and Craftwood III, Inc., dba Lunada Bay Hardware, on behalf of themselves and all others similarly situated